EMANUEL MORTIMER *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS, for the use of

ADA WELLS.

1. GUARDIAN AND WARD—*guardian alone responsible for the application of his ward's money.* In an action of debt against M, upon his bond as guardian, it appeared in proof, that M made a settlement of his guardian's account with the probate court, and that upon such settlement, M, by order of the court, executed to A, who was appointed his successor, a note for the amount found to be owing by him, and was thereupon discharged; that M afterward paid A a portion of said note in money, and at A's request made a payment for lumber to the extent of the balance of the note, and which lumber A used in improving the real estate of the wards. On the trial, the court below refused to allow M credit for the money paid for the lumber. *Held*, that this was erroneous; that the payment for the lumber amounted to the same as a payment in money, and should have been allowed as a credit.

2. A guardian may receive his ward's money, and when received, he is responsible for its application. If he misapplies it, no new liability is created against the parties from whom it was received, as it is no part of their duty to see that the guardian faithfully applies it.

60—49TH ILL.

APPEAL from the Circuit Court of Coles county; the Hon. JAMES STEELE, Judge, presiding.

The opinion states the case.

Mr. O. B. FICKLIN, Mr. JOHN SCHOLFIELD, and Messrs. WILEY & PARKER, for the appellants.

Mr. JAMES A. CONNELLY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of debt on a guardian's bond, brought by appellees in the Coles Circuit Court, against appellants. It appears that the former husband of Ada Wells, the beneficial plaintiff below, who resided in Cincinnati, Ohio, died, and by his will appointed her guardian of his three minor children; that she afterwards married appellant Mortimer, and they removed to Coles county, in this State. After arriving there, Mortimer was appointed guardian of the children by the probate court. He purchased, with their money, 160 acres of land for, and conveyed it to, them. He was afterwards, on the application of one of his securities on his guardian's bonds, cited to appear before the probate court for settlement of his guardian's account.

At the June term, 1864, of that court, he attended and made a settlement, and was found to have of their money the sum of $476.90, when he was ordered by the court to execute a note for that sum to Ada Wells, as testamentary guardian, which he did. He afterwards paid to her, on the note, $160 or $170, as he swears, or, as she testifies, $150. He also paid for lumber used by her in erecting a house on the land he had purchased for the minors, the sum of $349.55, and as he testified, under the direction of the guardian. The court below, who tried the case, without a jury, by consent, on the

evidence in the case, rendered a judgment against appellants for $210 and costs; to reverse which, they bring the case to this court by appeal.

There seems to be no doubt that Mortimer has, either in money paid directly to the guardian or with money paid for lumber used in erecting the house of the wards, fully paid and discharged the note and interest, provided the payment for the lumber can be applied as a credit. As to the money paid by him directly to the guardian, there is and can be no question, as she was fully authorized to receive it. Again, the lumber was used by her in the improvements placed upon the land of the wards, and they have received and are now enjoying its benefits; and equity, morals, and good conscience require that Mortimer should have his money thus paid refunded to him, and it is no more than the plainest and most common principles of justice, that those holding and enjoying such benefits, should pay for them, unless prohibited by some stern rule of law.

It is true, that they are under legal disability, and are incapable of making a contract that would bind them for improvements made upon their real estate, notwithstanding it may be the house that shelters them from the inclemencies of the weather. But the guardian whom the law has appointed to act for them, may receive their money, and when received, is responsible for its application. Any misapplication of their money by the guardian, does not create a new liability on the part of the persons from whom the money was collected. It is no part of their duty to see that it is faithfully applied. And when the guardian received this lumber from Mortimer, and applied it to the construction of the house on the land of her wards, it was precisely, in principle, the same as if he had paid the money to her and she had used it in the purchase of the same lumber. And had he paid the money and it had been thus applied, there could have been no pretense that Mortimer and his securities were liable for its misapplication.

And in this case, the purchase of the lumber by Mortimer, at the request of the testamentary guardian, is equally as binding on her as if he had paid the money to her and she had then purchased the lumber, and it operated as a discharge and satisfaction of his note.

The court below erred in not allowing the credit for the money thus paid for the lumber, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*